DECISION
Before the Court in this products liability action is Plaintiffs' Motion to Compel Defendants' Response to Interrogatories Dated November 17, 2010. Defendants Davol, Inc. ("Davol") and C.R. Bard, Inc. ("Bard") (collectively "Defendants") object to this motion. This Court afforded the parties an opportunity to be heard on February 7, 2011. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.
 I Facts and Travel
The instant matter involves litigation concerning allegations of defects in various models of the Composix Kugel Patches ("CK Patches") manufactured and sold by the Defendants Bard and/or Davol, its wholly owned subsidiary. In this matter, Plaintiffs renew their motion to compel Defendants to respond to Plaintiffs' twelve interrogatories dated November 17, 2010. Plaintiffs previously filed this motion in Ingram v. Davol, No. PC 07-4701, which was set for trial but has since been resolved. *Page 2 
These interrogatories address payments made to six consultants: (1) David A. Iannitti, M.D. ("Dr. Iannitti"); (2) Mark S. Moskowitz, M.D. ("Dr. Moskowitz"); (3) Paul V. Gryska, M.D. ("Dr. Gryska"); (4) John T. Moore, M.D. ("Dr. Moore"); (5) Keith Millikan, M.D. ("Dr. Millikan"); and (6) Michael Fenoglio, M.D. ("Dr. Fenoglio"). The interrogatories requested Defendants to "identify the total of all payments made by Defendants to [each consultant], including but not limited to, financial disbursements, honorariums, consulting fees, sponsorships, royalties, licensing fees, equipment, or other compensation for each and every year from 1999 to 2010 inclusive." It further requested of Defendants the following: "[f]or each year in which Defendants made any financial disbursements, honorariums, consulting fees, sponsorships, royalties, licensing fees, equipment, compensation or other payments to [each consultant], please provide an itemization of each and every payment made to [each consultant] and provide the reason for each payment."
In response to these interrogatories, Defendants provided the total annual payments from 2000 to 2007 for Dr. Iannitti, Dr. Moskowitz, Dr. Millikan, and Dr. Fenoglio. Defendants also offered Plaintiffs the annual total payments for Dr. Gryska from 2005 to 2010, to which Plaintiffs responded by filing the within motion. Defendants did not provide the itemization or reasons for payments regarding any of the consultants or any responses concerning Dr. Moore.
Dr. Iannitti, Dr. Moskowitz, Dr. Millikan, and Dr. Fenoglio ("Iannitti Study Authors") are the authors of the report, "Technique and Outcomes of Abdominal Incisional Hernia Repair Using a Synthetic Composite Mesh: A Report of 455 Cases" ("Iannitti Study"). The Iannitti Study, accepted for publication in mid-2007 in the *Page 3 
Journal of the American College of Surgery, was a central piece of evidence for Defendants in the Ingram case. Dr. Gryska is an expert that Defendants had proposed to testify in that case. Dr. Moore is an expert who Defendants had proposed to testify in other CK Patch cases.
In their motion, Plaintiffs argue that Defendants should respond fully to these interrogatories because the March 31, 2008 MDL Court Order does not bar this discovery. Furthermore, Plaintiffs contend that this information is relevant because it sheds light on potential bias of these experts' testimony. Defendants, however, maintain that this discovery is moot and premature because no pending discovery requests seeking this particular information exists and experts have yet to be designated in theBrokaw matter. Additionally, Defendants opine that this request is unduly burdensome and irrelevant because they have provided Defendants with the relevant years of total payments to these consultants. Defendants further aver that this discovery is barred by the March 31, 2008 MDL Court Order.
 II Analysis
Through discovery, Rhode Island litigants have the ability to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Super. R. Civ. P. 26(b)(1). Within this process, Super. R. Civ. P. 34 requires that a party produce discoverable documents in its "possession, custody or control." Super. R. Civ. P. 34(a). A requesting party may move for an order compelling discovery if a party fails to respond to a request for production or inspection submitted under Rule. 34. In granting or denying discovery orders, a justice of the Superior Court *Page 4 
has broad discretion. See Corvese v. Medco ContainmentServs., 687 A.2d 880, 881 (R.I. 1997).
The burden of demonstrating requisite materiality under Rule 34 rests on the party seeking production.DeCarvalho v. Gonsalves,106 R.I. 620, 627, 262 A.2d 630, 634 (1970). Within this analysis, the concept of relevancy is to be given a liberal application.Id. at 627, 262 A.2d at 634; see also
8 Wright Miller, Federal Practice and Procedure, Civil 3d § 2008 at 142 (stating that "relevancy should be construed liberally and with common sense, rather than in terms of narrow legalisms").[1] Thus, "the test to be applied is whether the material sought is relevant to the subject matter of the suit, not whether it is relevant to the pleadings." DeCarvalho,106 R.I. at 627, 262 A.2d at 634. This concept of relevancy, therefore, is not synonymous with "admissible" at trial.Id.; 8 Wright Miller § 2008 at 144-45; seealso Fed. Civ. R. P. 26(b)(1) ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); Super. R. Civ. P. 26(b)(1) ("It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.")
Payments to an expert witness are relevant in the discovery phase of litigation because they may show bias, which is admissible at trial. See In re Weir,166 S.W.3d 861, 864 (Tex. App. 2005) ("Generally, an expert witness may be questioned regarding *Page 5 
payment received for his work as an expert witness." (citingRussell v. Young, 452 S.W.2d 434, 436 (Tex. 1970)));see also 31A Am. Jur. 2d Expert and OpinionEvidence § 75 (2010) ("A jury is entitled to know the extent of the financial connection between a party and a witness and the cumulative amount a party has paid an expert during their relationship as such information is generally relevant to any personal interest the witness may have arriving at the stated opinion." (citations omitted)). Thus, in this case, evidence of payments to these consultants is relevant to the matter because it may be admissible to prove bias.[2] See Reynolds v.General Motors Corp., 2007 WL 2908564, at *2 (S.D.Ga. 2007);Wrobleski v. de Lara, 727 A.2d 930, 934 (Md. 1999) ("The amount of money that a witness is paid for testifying in the particular case is unquestionably disclosable on cross-examination.").
This motion was unique to the Ingram matter because the requested discovery involved experts who were involved in that specific trial. Moreover, the within discovery request was targeted to prove any possible potential bias in the testimony or opinions of those experts at the Ingram trial. SeeIn re Weir, 166 S.W.3d at 864; 31A Am. Jur. 2d Expert andOpinion Evidence § 75. As experts have yet to be designated inBrokaw and the interrogatories were specific to theIngram experts, this motion is premature. If these *Page 6 
experts are designated a matter in this Court's jurisdiction, this motion may then become relevant.[3]
 III Conclusion
For the foregoing reasons, Plaintiffs' motion to compel responses to their twelve interrogatories dated November 17, 2010 is denied without prejudice.
[1] As Rhode Island's discovery rules are substantially similar to the Federal Civil Procedure Rules, this Court will look to the Federal Rules and interpretations thereof for guidance.See Crowe Countryside Realty Assocs., Co., LLC v. NovareEngineers, Inc., 891 A.2d 838, 840 (R.I. 2006) (looking to federal court decisions for guidance as to how to interpret a Rhode Island Rule of Civil Procedure where the federal counterpart was "substantially similar").
[2] Nevertheless, this search for bias is not unfettered.American Family Mut. Ins. Co. v. Grant,217 P.3d 1212, 1217 (Ariz. App. 2009); see
Super. R. Civ. P. 26(b); In re Weir,166 S.W.3d at 864 ("[P]retrial discovery of all of a witness's accounting and financial records, solely for the purpose of impeachment, may be denied." (citing Russell,452 S.W.2d at 437)). Pursuant to Super. R. Civ. P. 26, discovery "shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative" or "the discovery is unduly burdensome." Accordingly, a plaintiff's need for discovery uncovering bias must be balanced against the need to "prevent broad-ranging discovery forays that serve to increase the cost, length, and burden of litigation with little or no corresponding benefit." American Family Mut. Ins. Co., 217 P.3d at 1217;see Super. R. Civ. P. 26(b)
[3] Accordingly, at this stage, it is unnecessary for this Court to address the parties' further arguments.
 *Page 1