**W.W. RODGERS AND SONS PRODUCE COMPANY and W.W. Rodgers and Sons Trucks, Inc., Relators,**

v.

**The Honorable H. Dee JOHNSON, Respondent.**

No. 05–84–00174–CV.

Court of Appeals of Texas, Dallas.

May 17, 1984.

David S. Kidder, Dallas, for relators.

Charles W. Waters, Paul N. Gold, Ana Leslie Muncy, City Atty., John E. Kirby, Asst. City Atty., Dallas, for respondent.

Before STOREY, WHITHAM and ROWE, JJ.

WHITHAM, Justice.

Relators, W.W. Rodgers and Sons Produce Company and W.W. Rodgers and Sons Trucks, Inc., seek mandamus against respondent, the Honorable H. Dee Johnson, judge of the 44th Judicial District Court of Dallas County, Texas, ordering Judge Johnson to permit certain discovery. We grant leave to file the petition for writ of mandamus. Upon consideration of the petition, we conclude that the trial court correctly refused to permit the discovery. Accordingly, we deny the writ of mandamus.

Before June 19, 1983, the Supreme Court had unrestricted power to issue writs of mandamus "agreeable to the principles of law regulating such writs, against any district judge." TEX.REV.CIV.STAT.ANN. art. 1733 (Vernon 1962). The mandamus power of the courts of appeals was much more restrictive, being limited to enforcing such courts' jurisdiction or compelling a judge of the district or county court to proceed to trial and judgment in a cause. TEX.REV.CIV.STAT.ANN. arts. 1823, 1824 (Vernon 1964). Consequently, when a trial court judge entered an erroneous discovery order, writs of mandamus were sought from the Supreme Court rather than from the courts of appeals. By statutory enactment, however, the courts of appeals now have concurrent jurisdiction with the Supreme Court to issue all writs of mandamus "agreeable to the principles of law regulating such writs, against any Judge of a District or County Court." TEX.REV.CIV.STAT.ANN. art. 1824 (Vernon Supp.1984). Accordingly, we look to decisions of the Supreme Court for direction in the exercise of our newly ac-

quired power to issue all writs of mandamus "agreeable to the principles of law regulating such writs, against any Judge of a District or County Court."

■ We begin by noting our wholehearted agreement with the observation in *Werner v. Miller*, 579 S.W.2d 455, 457 (Tex. 1979):

> This Court is concerned over the great loss of time and judicial resources through "discovery gamesmanship" of both parties in this cause. However, we believe the supervision of the trial docket is properly left to the discretion of the trial judge. This Court does not have the time or the personnel to supervise the trial dockets of this state. It is primarily our function to review causes decided by the fourteen courts of civil appeals and not to stand behind the trial judges as an umpire to immediately second-guess the numerous decisions necessarily made by a trial judge during the course of a trial. Norvell and Sutton, *The Original Writ of Mandamus in the Supreme Court of Texas*, 1 St. Mary's L.J. 177, 183, 184 (1969).

It is primarily this court's function to review judgments of the trial courts in the seven counties that comprise the Fifth Supreme Judicial District of Texas. Certainly, it is not our function to referee the constant and myriad decisions these trial courts must make as causes in those courts move from filing to judgment.

■ Moreover, we are cognizant of the potential for harm to the judicial system implicit in a broad exercise of the issuance of writ of mandamus. As put by the Supreme Court in *Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969), *cert. denied*, 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970):

> There is sound reason why appellate courts should not have jurisdiction to issue writs of mandamus to control or to correct incidental rulings of a trial judge when there is an adequate remedy by appeal. Trials must be orderly; and constant interruption of the trial process by appellate courts would destroy all semblance of orderly trial proceedings. Moreover, with this type of intervention, the fundamental concept of all American judicial systems of trial and appeal would become outmoded. *Having entered the thicket to control or correct one such trial court ruling*, the appellate courts would soon be asked in direct proceedings to require by writs of mandamus that trial judges enter orders, or set aside orders, sustaining or overruling (1) pleas to the jurisdiction, (2) pleas of privilege, (3) pleas in abatement, (4) motions for summary judgment, (5) motions for instructed verdict, (6) motions for judgment non obstante veredicto, (7) motions for new trial, and a myriad of interlocutory orders and judgments; and, as to each, it might logically be argued that the petitioner for the writ was entitled, as a matter of law, to the action sought to be compelled. [emphasis added].

Nevertheless, the Supreme Court entered the thicket following *Pope*. For illustration, *see Barker v. Dunham*, 551 S.W.2d 41 (Tex.1977); *Allen v. Humphreys*, 559 S.W.2d 798 (Tex.1977); and *West v. Solito*, 563 S.W.2d 240 (Tex.1978). Thus, we read *Werner* as notice that the Supreme Court wanted out of the thicket and TEX.REV. CIV.STAT.ANN. art. 1824, as amended, as the Supreme Court's escape from the thicket. We too are reluctant to enter the thicket.

Indeed, we have issued the writ under article 1824, as amended, only in situations in which the law clearly forbade the trial court's action or clearly compelled trial court action. In *Greenberg, Fisk & Fielder v. Howell*, 676 S.W.2d 431 (Tex.App—Dallas, 1984, no writ) we issued mandamus where the law clearly prohibited trial court determination with regard to recusal motions. In *Gaynier v. Johnson*, 673 S.W.2d 899 (Tex.App—Dallas, 1984, no writ), we issued mandamus where the law clearly required the trial court to prevent the disclosure of privileged information. In neither case did the law afford the trial court an area in which it had any discretion. In both *Greenberg* and *Gaynier*, the law ab-

solutely required one order from the trial court, but the trial court in each instance made an opposite and obvious erroneous order. Therefore, we issued the writs of mandamus. In the present case, however, the law does not clearly command the trial court to permit the discovery sought. To the contrary, given the facts and the Supreme Court's holding in *Russell v. Young*, 452 S.W.2d 434 (Tex.1970), the trial court in the present case had no choice but to refuse to permit the discovery sought. Although the trial court did so, it denied the discovery on grounds different from those we consider to be proper in light of *Russell*.

■ Relators operate trucks to transport their own produce for buying and selling purposes. One of relators' trucks was involved in an accident with a Dallas police vehicle which allegedly resulted in the death of police officer Carl Norris. On the day of the accident, Dallas police officers at the scene of the accident took six statements from witnesses to the accident and on that same day also prepared an addendum/memorandum to the official accident report. Mary Ruth Norris, individually and on behalf of the legal beneficiaries and the estate and heirs of Carl Joel Norris, brought suit in respondent's court against relators alleging negligence on the part of the relators as defendants. The City of Dallas intervened on the basis that the city is subrogated to the rights of statutory beneficiaries of its deceased employees to the extent of any workers' compensation benefits paid by the city.

During the course of discovery, relators served a request for production under Tex.R.Civ.P. 167 (Vernon Supp.1983), and moved for an order to compel the city to produce all statements, affidavits, and summaries of interviews of witnesses to the accident and any addendum, report, memo or summary in addition to the official accident report. The trial court undertook an in camera examination of the six witnesses' statements and the addendum/memorandum and thereafter entered an order direct-ing that the city need not produce the portion of the addendum/memorandum marked by the trial court and that the city need not produce the six statements of the witnesses. The trial court found that such statements and marked portions of the addendum/memorandum were exempt from discovery by virtue of the provisions of Tex.R.Civ.P. 186a (Vernon Supp.1983). We conclude that we need not reach the question of whether the statements and the addendum/memorandum were exempt from discovery by virtue of the provisions of rule 186a. We reach this conclusion because of the underlying purpose for which the discovery was sought.

At oral argument, relators conceded that they have deposed or could depose each of the six witnesses and the involved city employees. Concerning the witnesses' statements, relators tell us in one of their briefs that "[t]he statements are critical to relators' case because relators need to know if the witnesses have changed their stories with respect to the accident, and relators need to be able to use such timely statements in cross-examining the witnesses and refreshing their recollection." With respect to the addendum/memorandum, relators tell us in that same brief that "this document will be important for the cross-examination of the police officers who prepared it. Since a police officer was involved in the accident, testifying police officers might have formed biases in this case that need to be checked against their perceptions immediately following the accident." We conclude that, in the final analysis, the present case involves nothing more than relators' efforts to obtain the witnesses' statements and the addendum/memorandum solely for impeachment purposes.

The Supreme Court addressed a similar situation in *Russell*, 452 S.W.2d 434. In *Russell*, the question to be decided was:

[W]hether the records of a potential witness in a lawsuit are discoverable prior to trial in instances where the potential witness is not a party to the lawsuit and

whose credibility has not been put in issue and where the records do not relate directly to the subject matter of the pending suit and are sought to be discovered for the sole purpose of impeachment of such witness by showing his bias and prejudice.

452 S.W.2d at 435. In *Russell*, the records were held not discoverable because they "cannot possibly have impeachment value because there is nothing yet to impeach and there may never be anything to impeach, depending upon the contents of the testimony, if any, which is introduced during the trial of the lawsuit." 452 S.W.2d at 437. We apply the same test and hold, therefore, that under *Russell* the witnesses' statements and the addendum/memorandum sought in the present case are not discoverable.

 In *Russell*, mandamus issued because "respondent had no *authority* to order relator to produce [the items in controversy]." (emphasis ours). 452 S.W.2d at 435. *Russell* may be searched in vain for reference to trial court discretion or its abuse. Thus, in *Russell*, the Supreme Court chose to cast its opinion in terms of "authority to order" rather than in terms of "discretion" and its "abuse." We are of course compelled to follow. Courts of appeals, as intermediate appellate courts, are bound by the pronouncements of the Supreme Court on the law until the Supreme Court states to the contrary. *Jones v. Hutchinson County*, 615 S.W.2d 927, 933 (Tex.Civ.App.—Amarillo 1981, no writ).

We recognize that in *Russell* the records sought were those of a nonparty. Relators make much of this distinction. We conclude, however, that this is a distinction without merit. *Russell's* language remains applicable to the present case. The witnesses' statements and the addendum/memorandum "cannot possibly have impeachment value because there is nothing yet to impeach and there may never be anything to impeach, depending upon the contents of the testimony, if any, which is introduced during the trial of the lawsuit." *Russell*, 452 S.W.2d at 437. We hold,

therefore, that in the present case the trial court had no authority to order the production of the witnesses' statements and the addendum/memorandum as a matter of law. Absent that authority, the trial court had no discretion. The trial court could only act one way, i.e., deny the discovery sought. The trial court did so. Accordingly, we hold that the trial court properly refused to allow the discovery sought.

In this court it is also asserted that the statement and addendum/memorandum are not discoverable under TEX.R.EVID. 503. In light of our holding, we find it unnecessary to address the questions of whether the statements and addendum/memorandum are discoverable under rule 186a and TEX.R.EVID. 503 and whether the city waived its privileges under rule 186a and TEX.R.EVID. 503 by delivery of those documents to Norris' attorney.

Writ of mandamus denied.